UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SUBROGATION DIVISION INC., <br><br> Plaintiff, <br><br> vs. <br><br> STANLEY BROWN and <br> 21ST CENTURY INDEMNITY <br> INSURANCE COMPANY, <br><br> Defendants. | CIV. 16-5109-JLV <br><br><br> ORDER |

## INTRODUCTION

This case arises out of a 2013 rental vehicle accident in Rapid City, South Dakota, which came to implicate the Graves Amendment, a federal law. Plaintiff Subrogation Division, Inc. ("SDI"), the assignee of causes of actions owned by Overland West, Inc. ("Overland"), brings this suit against defendants Stanley Brown and 21st Century Indemnity Insurance Company ("21st Century") seeking a declaratory judgment that the Amendment preempts South Dakota law requiring it to pay the costs of the 2013 accident. (Docket 32). Plaintiff also asks the court to enforce Overland's rental agreement by requiring defendants to reimburse it for the costs of the accident and pay attorney's fees. Id. Now pending before the court are the parties' cross-motions for summary judgment. (Dockets 39 & 47). Each party opposes the other's motion.

(Dockets 54 & 56). For the reasons given below, the court grants summary judgment to plaintiff and denies it to defendants.[1]

## I. Facts

This factual recitation is derived from each party's statement of undisputed material facts, as well as defendants' response to plaintiff's statement of undisputed material facts. (Dockets 40, 48 & 55). The facts in this case are generally undisputed.

On May 3, 2013, Mr. Brown rented a vehicle from Overland in Rapid City, South Dakota. (Docket 55 at ¶ 5). Overland is the Hertz licensee in Rapid City and is in the business of renting vehicles. Id. at ¶¶ 2-3. Mr. Brown entered into a rental agreement with Overland. Id. at ¶ 4. In the rental agreement, Mr. Brown agreed to indemnify Overland for "any and all loss, liability, claim, demand, cause of action, attorneys' fees and expense of any kind . . . arising from [his] use or possession of the [rental vehicle] . . . including but not limited to attorneys' fees incurred by Overland [] to enforce any of its rights[.]" Id. at ¶ 11. The rental agreement also provided that Mr. Brown's "valid and collectible automobile liability insurance" "will be primary" in the event of an accident. (Docket 48 at ¶ 3).

Also on May 3, Mr. Brown collided with a vehicle owned by Dan Claymore. (Docket 55 at ¶ 8). Mr. Brown attempted to turn onto Interstate 90 from a

---

[1]Plaintiff and defendants each requested oral argument on their summary judgment motions. The court does not find oral argument useful in resolving this case.

non-turning lane and collided with Mr. Claymore's vehicle.[2]  Id. at ¶¶ 7-8.

Defendants agree that Overland did not cause the accident through any

negligence or criminal wrongdoing.  Id. at ¶ 12.  The accident resulted in

$2,271.75 in damages to Mr. Claymore's vehicle.  Id. at ¶ 9.  Overland's

insurance carrier paid the Claymore damages and Overland reimbursed the

carrier because the amount did not exceed Overland's deductible.  Id. at ¶ 10.

Mr. Brown carried liability insurance meeting South Dakota's minimum

liability coverage requirements from 21st Century.  (Docket 48 at ¶ 5).  Neither

Mr. Brown nor 21st Century reimbursed Overland or plaintiff for the Claymore

damages.  (Docket 55 at ¶ 13).  Overland assigned its rights in this action to

SDI.  Id. at ¶ 1.  SDI brought this action seeking to recover the Claymore

damages.  (Docket 32).

## II.    Jurisdiction

"Federal courts have an independent obligation to ensure that they do not

exceed the scope of their jurisdiction[.]"  Henderson ex rel. Henderson v.

Shinseki, 562 U.S. 428, 434 (2011).  This is true even when no party raises

jurisdiction as an issue.  Id.  Here, plaintiff alleges the court has federal

question jurisdiction over this case under 28 U.S.C. § 1331 because the case

---

[2]Defendants state "no legal determination" attributing fault to Mr. Brown
was ever made.  (Docket 55 at ¶ 7).  However, they admit Mr. Brown improperly
turned onto Interstate 90, incurring the collision, and he paid a citation for the
accident.  Id.

involves the Graves Amendment, a federal statute.[3]   (Docket 32 at ¶ 3) (citing

49 U.S.C. § 30106).   In their answer, defendants assert this case does not raise

a substantial federal question and the Amendment does not create a federal

cause of action.   (Docket 36 at p. 3).   Defendants do not develop this argument

in their summary judgment briefing.   The court undertakes its own

jurisdictional inquiry and concludes federal question jurisdiction exists.

Federal question jurisdiction is easily found "when federal law creates the

cause of action asserted."   Gunn v. Minton, 568 U.S. 251, 257 (2013).   But the

Graves Amendment does not create a private cause of action.   Nothing in the

Amendment expressly creates a cause of action.   Nor can the court discern any

congressional intent to create an implied cause of action from the text of the

Amendment.   See Cort v. Ash, 422 U.S. 66, 78 (1975) (setting forth factors

courts use to determine whether to imply a private remedy).   The text of the

Amendment makes clear it was enacted to create a preemption defense for rental

car companies in vicarious liability suits.   49 U.S.C. § 30106.   Unsurprisingly,

---

[3]Despite the parties' apparently diverse citizenship, plaintiff does not
allege the court has diversity jurisdiction over this case, perhaps because the
amount in controversy appears to only be $2,271.75.   See 28 U.S.C. § 1332(a).

Graves Amendment cases appear to almost exclusively arise in state courts or in federal courts sitting in diversity.[4]

The lack of a federal cause of action does not foreclose the possibility of federal question jurisdiction. "[I]n certain cases[,] federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258. The first, second, and fourth parts of this test require little analysis, but the third prong raises difficult questions.

Plaintiff raised the Graves Amendment as the central theme of its complaint and the parties vigorously dispute its application to this case, satisfying the first and second prongs of the Grable test. As to the fourth element, the court does not fear "disrupting the federal-state balance approved by Congress" by resolving this case because, as a preemption measure, the

---

[4]See, e.g., Carton v. Gen. Motor Acceptance Corp., 611 F.3d 451 (8th Cir. 2010); Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242 (11th Cir. 2008); Green v. Toyota Motor CreditCorp, 605 F. Supp. 2d 430 (E.D.N.Y. 2009); Puerini v. LaPierre, 208 A.3d 1157 (R.I. 2019); Martin v. Powers, 505 S.W.3d 512 (Tenn. 2016); Rodriguez v. Testa, 993 A.2d 955 (Conn. 2010); Meyer v. Nwokedi, 777 N.W.2d 218 (Minn. 2010).

Amendment is designed to overrule contrary state law.[5]  Id.  Congress no doubt

intended for federal courts to enforce the Amendment in an appropriate case.

Cf. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 697 (2006)

(finding no federal question jurisdiction where statute "render[ed] preemptive

contract terms in health insurance plans, not provisions enacted by Congress.");

see also Grable, 545 U.S. at 318 (noting lack of "preemption of state remedies"

weighed in favor of no federal question jurisdiction).   Allowing plaintiff to raise

its Graves Amendment claim in a federal forum also does not disrupt the

federal-state balance because it would not "inevitably result in exclusive [federal]

jurisdiction[.]"   Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn.

LLC, 843 F.3d 325, 334 (8th Cir. 2016) (finding no federal question jurisdiction

where statute would give exclusive jurisdiction to federal courts).

The court is skeptical the federal interest in resolving plaintiff's claim is

substantial.  "[I]t is not enough that the federal issue be significant to the

particular parties in the immediate suit; . . . [t]he substantiality inquiry . . . looks

instead to the importance of the issue to the federal system as a whole."  Gunn,

---

[5]The court notes the general rule that "the existence of a federal defense, including a defense of preemption . . . , does not create federal-question jurisdiction."  Griffioen v. Cedar Rapids & Iowa City Ry. Co., 785 F.3d 1182, 1188 (8th Cir. 2015).   But it is the *plaintiff's* complaint which is relevant for purposes of determining whether federal question jurisdiction exists.  See Franchise Tax Bd. of State of Cal. v. Constr. Laborer Vacation Trust for S. Cal., 463 U.S. 1, 10 (1983).   Here, plaintiff asks the court to declare a Graves Amendment preemption defense exists and enforce Mr. Brown's rental agreement accordingly.   Defendants are not raising a preemption defense as a basis for federal question jurisdiction.

568 U.S. at 260. As a general rule, state law primarily governs motor vehicle insurance. The court would ordinarily not hesitate to dismiss a case alleging federal question jurisdiction but implicating only state insurance law for lack of substantiality. On its face, this dispute appears to bear little importance to "the federal system as a whole." Id.

However, Congress' intent in enacting the Graves Amendment weighs heavily in favor of federal question jurisdiction. Congress intended to preempt state laws imposing vicarious liability on commercial rental vehicle owners. Garcia, 540 F.3d at 1246; Green, 605 F. Supp. 2d at 434. By doing so through federal law, Congress intended to replace the hodgepodge of state laws with a uniform rule barring vicarious liability suits. Congress' intent to undermine state tort law implicates the availability of a federal forum to enforce preemption.[6] See Great Lakes, 843 F.3d at 333 (finding no federal question jurisdiction when lack of "federal interest in national uniformity" is evident). Resolving plaintiff's claim will be a matter of enforcing federal law and giving effect to Congress' intent, tasks calling upon the expertise of federal courts.

Plaintiff also presents a "nearly pure issue of law" that, once settled, will be useful to courts throughout South Dakota. McVeigh, 547 U.S. at 700.

---

[6]The court acknowledges there is no reason why a South Dakota court could not competently apply the Graves Amendment in this case. Indeed, the court cannot fathom why plaintiff brought its claims to federal court on such shaky jurisdictional grounds. Nevertheless, the court concludes it has jurisdiction over this case and must exercise it. Mata v. Lynch, 135 S. Ct. 2150, 2156 (2015) ("[W]hen a federal court has jurisdiction, it also has a virtually unflagging obligation to exercise that authority.") (internal quotation and citation omitted).

Resolving plaintiff's claim primarily requires interpreting the Graves Amendment and its preemptive effect; it requires less analysis of South Dakota law. See Great Lakes, 843 F.3d at 332-33 (finding no federal question jurisdiction where resolving case required interpreting state instead of federal law). To the extent the court will have to interpret the parties' rental contract—"ordinarily a matter of state law"—this is an unexceptional exercise of the court's supplemental jurisdiction. Id. at 334 (internal quotation omitted).

The court finds it has subject matter jurisdiction over this case as part of its federal question jurisdiction. Accordingly, the court has jurisdiction to make any necessary declaratory judgments. 28 U.S.C. § 2201(a). The court also has supplemental jurisdiction over plaintiff's request that the court enforce its rental contract with Mr. Brown. Id. at § 1367(a).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.

Id. at 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

9

## IV.   Merits Analysis

The parties' cross-motions for summary judgment raise three distinct issues.   First, whether the Graves Amendment preempts South Dakota law requiring the rental company's insurance to primarily pay claims incurred by a renter.   Second, if the Amendment does preempt South Dakota law, whether that statute is a valid exercise of Congress' Commerce Clause authority.   And finally, whether the rental agreement's requirement that Mr. Brown indemnify Overland is enforceable.   The court finds the answer to each of these questions is yes and grants summary judgment to plaintiff.

### A.   South Dakota rental insurance law & the Graves Amendment

In South Dakota, "[a]n owner's policy of liability insurance . . . shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured[.]"   SDCL § 32-35-70.   "This statute clearly requires that an automobile owner provide coverage for those who use the vehicle with either express or implied permission."   Auto Owners Ins. Co. v. Enterprise Rent-A-Car Co.-Midwest, 663 N.W.2d 208, 210 (S.D. 2003).   In Auto Owners, the South Dakota Supreme Court held a rental car company, like other vehicle owners, "is responsible for insuring its rental vehicles" and "must provide *primary* liability coverage for its vehicles . . . up to the mandatory minimum amounts."   Id. at 211-12 (emphasis added).

The Graves Amendment also regulates rental car insurance.[7] The Amendment's preemption clause provides:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> > (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). The Amendment also contains a savings clause, which provides:

> Nothing in this section supersedes the law of any State or political subdivision thereof—
>
> > (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
> >
> > (2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

Id. at § 30106(b). The Amendment does not define "financial responsibility."

---

[7]The Graves Amendment was enacted as part of the Safe, Accountable, Flexible, Efficient Transportation Equity Act of 2005. Pub. L. No. 109-59, § 10208, 119 Stat. 1144, 1935 (2005). It is so named because Representative Sam Graves of Missouri proposed the amendment. 151 Cong. Rec. 1199 (Mar. 9, 2005).

## B.    Preemption

"Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." Arizona v. United States, 567 U.S. 387, 399 (2012). When "the statute contains an express pre-emption clause," applying the clause "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Trans., Inc. v. Easterwood, 507 U.S. 658, 664 (1993).

State law is also preempted "when [it] conflict[s] with federal law." Arizona, 567 U.S. at 399. "Conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Keller v. City of Fremont, 719 F.3d 931, 940 (8th Cir. 2013) (quoting Arizona, 567 U.S. at 399. "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" Crosby v. Nat'l. Foreign Trade Council, 530 U.S. 363, 373 (2000). "In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." Arizona, 567 U.S. at 400 (internal quotations omitted).

The Graves Amendment contains an express preemption clause. No commercial rental vehicle owner can be held "liable under the law of any State . . . by reason of being the owner of the vehicle" for damages "aris[ing] out of the

use, operation, or possession of the vehicle during the period of the rental[.]"[8]
49 U.S.C. § 30106(a). There is no doubt this clause acts to preempt any attempt
to hold Overland liable under South Dakota law for the Claymore damages.
Defendants more or less concede a plain reading of the Amendment's preemption
clause bars liability against Overland. Instead, they argue the Amendment's
savings clause protects the South Dakota law announced in Auto Owners from
preemption. (Docket 49 at pp. 4-9).

As noted above, Congress did not define what it meant by the term
"financial responsibility" it used in the savings clause. 49 U.S.C. § 30106(b).
Defendants argue SDCL § 32-35-70 and Auto Owners represent South Dakota
law on financial responsibility and are saved from preemption. But their
argument merely consists of an analysis of the law promulgated by Auto Owners
and a bare declaration that § 32-35-70 is a law setting "either a financial
responsibility or a minimum insurance requirement." (Docket 49 at p. 9).
Defendants did not offer any statutory interpretation of either the savings clause
or South Dakota law.

South Dakota's rental insurance laws do not wholly fit within the savings
clause. To begin, the savings clause applies only to two distinct and narrow
categories of state law. First, state laws "imposing financial responsibility or

---

[8]Defendants concede the two conditions necessary to activate the
preemption clause. Overland—the original owner of the claim—"is engaged in
the trade or business of renting or leasing motor vehicles" and was not negligent
or otherwise involved in criminal wrongdoing connected to the accident.
49 U.S.C. §§ 30106(a)(1)-(2); see also Docket 55 at ¶¶ 3, 12.

insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle" are not preempted. 49 U.S.C. § 30106(b)(1). Second, state laws "imposing liability on [rental companies] for failure to meet the financial responsibility or liability insurance requirements" are not preempted. Id. at § 30106(b)(2).

The terms "insurance standards" and "liability insurance requirements" are clear and straightforward. They refer to state laws requiring vehicle owners to maintain certain types of insurance, generally liability insurance. The term "financial responsibility" used in the savings clause may seem at first glance to be more ambiguous than its compatriots. However, common principles of statutory interpretation lead the court to conclude financial responsibility is best understood as describing liability insurance and analogous forms of insurance-like financial instruments designed to compensate for injuries and satisfy judgments.

Congress' choice to juxtapose financial responsibility with terms like "insurance standards" and "liability insurance requirements" indicates an affiliation between these concepts. See S.D. Warren Co. v. Maine Bd. of Envtl. Prot., 547 U.S. 370, 378 (2006) ("The canon[] noscitur a sociis[] reminds us that a word is known by the company it keeps[.]") (internal quotations and citations omitted). Black's Law Dictionary defines a financial responsibility act as a "state statute conditioning license and registration of motor vehicles on proof of insurance or other financial accountability." Black's Law Dictionary at 706 (9th

ed. 2009); see Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 566-67 (2012) (Noting "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning[,]" then consulting Black's Law Dictionary). South Dakota law likewise considers liability insurance, bonds or self-insurance as "forms of financial responsibility[.]" SDCL § 32-35-113. It is clear Congress included the term "financial responsibility" in the savings clause to exempt state statutes requiring liability insurance-like instruments from preemption.[9]

Section 32-35-70, which requires vehicle owners to maintain certain levels of liability insurance covering both the owner and any other driver of a vehicle, is a statute "imposing financial responsibility or insurance standards" on a vehicle owner. 49 U.S.C. § 30106(b)(1); see also SDCL § 32-35-113 (requiring "[e]very driver or owner of a motor vehicle" to maintain "liability insurance" or other forms of "financial responsibility"). It fits squarely within the savings clause. The Graves Amendment does not prevent South Dakota from requiring vehicle owners—including rental car companies—from maintaining liability insurance or an equivalent form of insurance. Section 32-35-70 is not preempted.

However, the South Dakota Supreme Court's construction of § 32-35-70 in Auto Owners is preempted to the extent it forces rental companies to be vicariously liable for the torts of renters. Auto Owners requires a rental company like Overland to "provide *primary* liability coverage" for the vehicles it rents out to customers like Mr. Brown. 663 N.W.2d at 211 (emphasis added).

---

[9]Other courts have reached the same conclusion. See, e.g., Garcia, 540 F.3d at 1246-48; Testa, 993 A.2d at 963; Nwokedi, 777 N.W.2d at 224.

Defendants argue Auto Owners forbids plaintiff from "shift[ing] its financial responsibility obligations" to defendants. (Docket 58 at p. 5). Defendants' characterization of Auto Owners' holding on this point is correct, which is why the Graves Amendment preempts it. Recall that Overland ultimately paid the Claymore damages because they fell within its insurance deductible. (Docket 55 at ¶ 10). By requiring Overland's insurance—and ultimately Overland—to primarily cover the Claymore damages, Auto Owners forces Overland to be vicariously liable for Mr. Brown's torts.

This is the precise result barred by the Graves Amendment. The Amendment states rental companies like Overland *"shall not be liable"* under state law for damages incurred by renters. 49 U.S.C. § 30106(a) (emphasis added). The form in which South Dakota law attempts to achieve this outcome does not matter. It is true Auto Owners is an interpretation of a financial responsibility law undoubtedly protected by the Amendment's savings clause. But to conclude the savings clause protects Auto Owners' requirement that Overland assume responsibility for Mr. Brown's accident would swallow the

preemption clause and negate the Amendment's primary purpose.[10]   The court
cannot endorse this outcome.

Auto Owners' requirement that Overland pay the Claymore damages is
preempted by the Graves Amendment.   However, the Amendment does not
otherwise preempt the law announced in Auto Owners.   The savings clause
protects South Dakota's power to require rental companies to carry insurance.
South Dakota law simply may not require rental companies to be vicariously
liable for damages incurred solely by renters through insurance law or otherwise.

### C.   Constitutionality

Defendants challenge the Graves Amendment's constitutionality.
(Docket 49 at pp. 10-12).   They argue Congress lacked the power under the
Commerce Clause to enact the Amendment.   Id.   However, they offer little
original constitutional analysis.   Instead, they merely restate the discredited
analysis of a Florida district court.   Id. (citing Vanguard Car Rental USA, Inc. v.
Huchon, 532 F. Supp. 2d 1371 (S.D. Fla. 2007)).   As plaintiff notes, the United
States Court of Appeals for the Eleventh Circuit fatally undermined Huchon's
analysis in a thorough opinion concluding the Graves Amendment is

---

[10]Other courts have reached the same conclusion.   See Garcia, 540 F.3d
at 1248 ("If we construe the Graves Amendment's savings clause" to allow for a
vicarious liability suit under a state financial responsibility law, "it would render
the preemption clause a nullity."); Enter. Rent-A-Car Co. of Boston, LLC v.
Maynard, No. 2:11-CV-00047, 2012 WL 1681970 at *9 (D. Me. May 14, 2012)
("Why would Congress expressly preempt state laws that imposed . . . liability on
car rental companies in one part of [the Graves Amendment] only to allow
continued . . . liability in the guise of state financial responsibility statutes in
another?   The answer is that Congress did not.").

constitutional. (Docket 56 at pp. 1-2) (citing <u>Garcia</u>, 540 F.3d at 1249-53).

Nevertheless, defendants correctly respond that <u>Garcia</u> is not controlling law in

this district. (Docket 58 at p. 9). The court undertakes the requisite

constitutional analysis and concludes, like the vast majority of courts to confront

this question, that the Graves Amendment is constitutional. <u>See</u>, <u>e.g.</u>, <u>Garcia</u>,

540 F.3d at 1249-53; <u>Green</u>, 605 F. Supp. 2d at 434-36 (collecting cases); <u>Testa</u>,

993 A.2d at 967-69.

There are "three broad categories of activity that Congress may regulate

under its commerce power." <u>United States v. Lopez</u>, 514 U.S. 549, 558 (1995);

<u>see also</u> U.S. Const. art. I, § 8, cl. 3.

> Congress may regulate the use of the channels of interstate
> commerce. Second, Congress is empowered to regulate and protect
> the instrumentalities of interstate commerce, or persons or things in
> interstate commerce, even though the threat may come only from
> intrastate activities. Finally, Congress' commerce authority
> includes the power to regulate those activities having a substantial
> relation to interstate commerce, *i.e.*, those activities that
> substantially affect interstate commerce.

<u>Id.</u> at 558-59 (internal citations omitted). The Graves Amendment does not

implicate channels of interstate commerce, which primarily concern "interstate

transportation routes through which persons and goods move." <u>United States</u>

<u>v. Morrison</u>, 529 U.S. 598, 613 n.5 (2000) (internal quotation omitted).

However, the Amendment concerns both "persons [and] things in

interstate commerce" and "activities that substantially affect interstate

commerce." <u>Lopez</u>, 514 U.S. at 558-59. "Instrumentalities of interstate

commerce . . . are the people and things themselves moving in commerce,

including automobiles, airplanes, boats, and shipments of goods." United States v. Ballinger, 395 F.3d 1218, 1226 (11th Cir. 2005). Rental vehicles are instrumentalities of interstate commerce in that they often move in interstate commerce themselves—for example, from the manufacturer to the rental agency and between rental agencies—and in that they frequently transport individuals from state to state. The Amendment protects rental companies by lessening their tort liability, thereby lowering the cost of providing rental vehicles to the public. The Amendment is a valid exercise of Congress' power to regulate the instrumentalities of interstate commerce.

The Amendment is also constitutional as a regulation of activities substantially affecting interstate commerce. "Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." Lopez, 514 U.S. at 560. Supreme Court "case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Gonzales v. Raich, 545 U.S. 1, 17 (2005).

> In assessing the scope of Congress' authority under the Commerce Clause . . . the task before [a court] is a modest one. [The court] need not determine whether [the] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a rational basis exists for so concluding.

Id. at 22 (internal quotation omitted).

Rental vehicle tort claims are an economic activity substantially affecting interstate commerce. There is a rational basis for Congress to conclude

19

vicarious liability tort claims brought against rental companies drive up the price of renting a vehicle. Congress could have rationally found that rental companies will pass the price of tort judgments on to consumers in the form of higher rental prices. Congress also could have rationally found that rental companies would be reluctant to operate in jurisdictions allowing vicarious liability suits, affecting the national market. In short, "[t]here is no question that the commercial leasing of cars is, in the aggregate, an economic activity with substantial effects on interstate commerce." Garcia, 540 F.3d at 1252.

Finally, the court agrees with those courts which have rejected the distinction, posited by defendants, between regulation of tort liability and regulation of the commerce in rental vehicles. (Docket 49 at pp. 11-12). The Eleventh Circuit succinctly identified the flaw in this argument:

> This is a distinction without a difference, as the state tort law preempted by the statute regulates the rental car market; in other words, the effect of the statute is to deregulate the rental car market. And it has long been understood that the commerce power includes not only the ability to regulate interstate markets, but the ability to facilitate interstate commerce by removing intrastate burdens and obstructions to it.

Garcia, 540 F.3d at 1252; see also Testa, 993 A.2d at 968-69 (same). The court would also note that tort law—which allocates economic resources, producing costs and benefits—can itself be commercial regulation in some respects and therefore subject to federal authority. Defendants identified no reason Congress could not preempt state tort laws having substantial effects on interstate commerce.

The court concludes Congress constitutionally enacted the Graves

Amendment using its Commerce Clause authority.

### D.    Enforceability of indemnification provision

Having determined the Graves Amendment preempts South Dakota law

and is constitutional, the court next finds the rental agreement between

Overland and Mr. Brown is enforceable.    The parties did not file the complete

rental agreement in the record of this case.    However, they did provide the

agreement's indemnification provision:

> You and all operators will indemnify and hold Overland West, its
> agents, employees and affiliates harmless from and against any and
> all loss, liability, claim, demand, cause of action, attorneys' fees and
> expense of any kind ("a loss") in excess of the limits stated herein or
> beyond the scope of the protection provided for herein, if any, arising
> from the use or possession of the car by you, any authorized
> operator or any other operator(s) with your, his or her permission,
> including but not limited to attorneys' fees incurred by Overland
> West to enforce any of its rights hereunder, unless such loss arises
> out of Overland West's sole negligence.

(Docket 55 at ¶ 11).    Plaintiff argues this provision of the agreement plainly

requires defendants to reimburse the Claymore damages and that the provision

is enforceable because the Graves Amendment preempts contrary South Dakota

law.    (Docket 41 at pp. 13-14).    Defendants argue <u>Auto Owners</u> invalidates the

indemnification provision.    (Docket 54 at pp. 5-6).    They also assert the

anti-subrogation rule prevents plaintiff from recovering the Claymore damages.

(Docket 58 at p. 3).

In resolving this supplemental state law claim, the court relies on South Dakota law. The parties raise both subrogation and reimbursement arguments. In South Dakota,

> [s]ubrogation is a time-honored theory in which insurers who pay a loss for insureds are entitled, within the limits of the subrogation doctrine, to pursue the actual wrongdoer. By subrogating a claim, the insurer is allowed to stand in the shoes of the insured to sue the tortfeasor to recover the payments it made. One limitation to the doctrine of subrogation, however, is the anti-subrogation rule, a defense that prohibits insurers from suing their own insureds to recover a loss. . . .

> Reimbursement, on the other hand, often differs factually from subrogation because rather than seeking recovery from a third party, it allows the insurer to recover policy payments directly from its own insured or beneficiary upon that party's recovery of the same loss from a third party. Therefore, although the mechanisms of recovery are different, the effect of subrogation and reimbursement are essentially the same.

James v. State Farm Mut. Auto. Ins. Co., 929 N.W.2d 541, 543 (S.D. 2019) (internal quotations and citations omitted).

The court first finds Auto Owners is distinguishable from the present claim. As noted above, Auto Owners holds that a rental company must provide primary insurance coverage for its vehicles. 663 N.W.2d at 211-12. The South Dakota Supreme Court, noting that the rental company at issue in that case was self-insured, feared the company would "contract itself out of providing insurance for the vehicles that it rents" and concluded "South Dakota has made clear that those who choose to self-insure are held to the same duties as those who do not." Id. at 211. Auto Owners, in large part, seemed animated by the

concern that self-insured rental companies acting, in essence, as insurers would shirk their obligations to renters, the insured.

That is simply not the situation in this case. Overland is not self-insured. It carries liability insurance satisfying South Dakota law with a commercial insurer. (Docket 57 at ¶ 3). In compliance with South Dakota law, Overland provided insurance to Mr. Brown, see Auto Owners, 663 N.W.2d at 210, but, unlike a self-insured rental company, Overland did not itself become Mr. Brown's insurer. Overland and Mr. Brown are not akin to an insurer and insured, distinguishing this case from Auto Owners. Auto Owners may have been applicable had Overland's insurer sought reimbursement or subrogation against Mr. Brown.[11] In the circumstances of this case, however, the court concludes Auto Owners does not bar indemnification.

The court next concludes that the anti-subrogation rule does not apply. Plaintiff, standing in Overland's shoes, is not Mr. Brown's insurer and is therefore not suing its insured. See James, 929 N.W.2d at 543. The indemnification provision is not barred by either Auto Owners or the anti-subrogation rule. Defendants do not contend the provision is unenforceable for other reasons. The court finds the provision is enforceable.

---

[11]The court expresses no view regarding the interplay between the Graves Amendment and Auto Owners in a situation where an insurer seeks reimbursement or subrogation from an insured for a claim the Amendment would have barred if brought in court.

Because the portion of the rental agreement at issue does not implicate insurance, the court turns to South Dakota law on ordinary contract interpretation.

> In determining the proper interpretation of a contract[,] the court must seek to ascertain and give effect to the intention of the parties. In order to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their plain and ordinary meaning. . . . When the meaning of contractual language is plain and unambiguous, construction is not necessary.

Coffey v. Coffey, 888 N.W.2d 805, 808-09 (S.D. 2016) (internal quotations and citations omitted). Given the parties' failure to file the full rental agreement, the court can only conclude they intended to waive any argument based on any part of the agreement's text other than the snippets they provided to the court. The court only evaluates the indemnification provision.

The indemnification provision is not ambiguous. The parties clearly agreed Mr. Brown would indemnify Overland "against any and all loss, liability, claim, demand, cause of action, attorneys' fees and expense of any kind . . . arising from the use or possession of the car[.]" (Docket 55 at ¶ 11). Mr. Brown incurred a loss by damaging Mr. Claymore's vehicle and Overland subsequently paid the loss. Under the indemnification provision, plaintiff, standing in Overland's shoes, has a right to recover for the Claymore damages and the attorney's fees associated with this action. Defendants, having argued only that the indemnification provision is not enforceable, do not contest that a plain reading of the provision requires Mr. Brown to indemnify Overland for the Claymore damages and attorney's fees.

24

The court will enforce the indemnification provision and require Mr. Brown to pay the Claymore damages and attorney's fees associated with this case to plaintiff. The court notes Mr. Brown—not defendant 21st Century—entered into the rental agreement with Overland. (Docket 55 at ¶ 6). No party asked the court to determine whether 21st Century must pay Mr. Brown's costs in this regard. The court's finding that Mr. Brown is liable for these costs should not be construed as precluding 21st Century from paying the costs, if payment is appropriate under the insurance contract between 21st Century and Mr. Brown.

**ORDER**

For the reasons given above, it is

ORDERED that plaintiff's motion for summary judgment (Docket 39) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 47) is denied.

IT IS FURTHER ORDERED that defendant Stanley Brown shall pay $2,271.75 to plaintiff within 60 days of the date of this order. Interest on this judgment shall accrue pursuant to 28 U.S.C. § 1961.

IT IS FURTHER ORDERED that plaintiff shall file a motion for attorney's fees setting forth a detailed accounting of the reasonable fees it expended on this matter within 60 days of the date of this order.

Dated January 14, 2020.

BY THE COURT:

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

25